UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARION TORRES and JAIME TORRES, h/w, : | | Hon. Joseph H. Rodriguez |
| GREENWAYS OF FRANKLIN, LLC, and | | |
| NEW GREENWAYS, LLC, | : | Civil Action No. 09-6282 |
| Plaintiffs, | : | MEMORANDUM OPINION & ORDER |
| v. | : | |
| FRANKLIN TOWNSHIP, | : | |
| Defendant. | : | |

This matter is before the Court on motion of Defendant Franklin Township for summary judgment pursuant to Federal Rule of Civil Procedure 56. Upon considering the submissions of the parties, for the reasons set forth below, the motion will be denied without prejudice.

<u>Background</u>

This action was filed in this Court on December 11, 2009 pursuant to the Fair Housing Act, 42 U.S.C. § 3601, and 42 U.S.C. § 1983. Plaintiff Marion Torres is an African-American woman who resides in an apartment in Turnersville, New Jersey with her husband, Plaintiff Jaime Torres, who is Hispanic. Mrs. Torres grew up in Franklin Township, still attends Church there, and would like to move back there, but she has found that she cannot afford to do so. Plaintiff Greenways of Franklin, LLC and New Greenways, LLC are real estate developers that together with their principal, Steven Shockett, own a number of lots in Franklin Township, approximately 329 acres. On these lots, Shockett had proposed to develop affordable housing in Franklin Township consistent with regulations adopted by New Jersey's Council on Affordable Housing ("COAH").

To that end, in February of 2007, Plaintiff Greenways of Franklin, LLC brought suit in the Superior Court, Gloucester County against the Township of Franklin and the Township of Franklin Planning Board seeking a "builder's remedy" to compel the Township to fulfill its obligations under the COAH regulations.[1] On August 14, 2008, the Superior Court granted Greenways' motion for judgment of non-compliance against the Township of Franklin and the Township of Franklin Planning Board, but left open the issue of the builder's remedy, to determine at a later date whether Greenways' proposed development project met the three requirements of South Burlington County N.A.A.C.P. v. Mount Laurel Twp., 92 N.J. 158, 279-80 (1983), and withstood any other defenses raised by the Township.  Greenways contends that it substantially revised its development project to meet all of the Township's demands, but the Township has merely delayed and prolonged deliberations.  Plaintiffs Greenways and New Greenways allege that they have spent hundreds of thousands of dollars pursuing the builder's remedy.

In the course of the State court litigation, Plaintiffs Greenways and New Greenways state that they learned that the reasons the Township failed to develop a COAH plan and approve the Greenways project are based on racial and anti-Semetic animus.  (Compl. ¶ 25.)  Accordingly, Plaintiffs seek injunctive and declaratory relief, as well as compensatory and punitive damages and attorney's fees and costs, for Defendant's violation of the Fair Housing Act (Count One) and Plaintiffs' rights under the Equal Protection and Due Process Clauses of the Constitution (Count Two).

---

[1] In that lawsuit, Greenways requested "approval for the construction of an inclusionary development on the land it owns in Franklin Township, including a substantial percentage of housing for 'low income households' and 'moderate income households' . . . as defined under the Mount Laurel Doctrine."  (Compl. In Lieu of Prerogative Writs, ¶ 1.)

Discussion

A. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.;

3

Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

B. Fair Housing Act

The FHA makes it unlawful to "refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). "A dwelling can be made

4

otherwise unavailable by, among other things, action that limits the availability of affordable housing." Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly, 658 F.3d 375, 381 (3d Cir. 2011) (citing Huntington Branch, N.A.A.C.P. v. Town of Huntington, 844 F.2d 926, 928–29, 938–39 (2d Cir. 1988); Smith v. Town of Clarkton, 682 F.2d 1055, 1059, 1062–64 (4th Cir. 1982); Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 130 (3d Cir. 1977)).  The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class.  Cmty. Serv., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 176 (3d Cir. 2005); Doe v. City of Butler, Pennsylvania, 892 F.2d 315, 323 (3d Cir. 1989).

C.  Testimony evidencing racial animus

In this case, Plaintiffs' theory is that intentional discrimination permeated the Franklin Township Committee and Planning Board, as evidenced by comments from the Township's most prominent members.

From 1996 to 2006, David Ferrucci served as Franklin Township's mayor and a member of the Franklin Township Planning Board.  (Deposition of Cynthia Merckx, 8:6-9:8; Deposition of David Ferrucci, 6:13-21.)  In or around 2004, Cynthia A. Merckx, a Township resident and a reporter for *The Sentinel of Gloucester County*, attended a Planning Board meeting where the Township's "professional planner" and engineer, Larry Weitzman, advised the Board that the Township's Master Plan lacked the "COAH portion that it needed to have for affordable housing." (Merckx Dep., 7:6-20.) Weitzman further advised, "if you don't do this, you're opening this town up for a lawsuit." (Merckx Dep., 10:22-24.)  In her capacity as "a resident of the township, as well as a reporter," Merckx suggested that Franklin Township could "possibly do senior

housing or maybe apartment housing for young couples." (Merckx Dep., 7:21-8:5.)

Merckx testified as to what happened next:

> After the meeting was over, Mr. Ferrucci . . . was speaking to different people and then he came over to me and he said, I'd like to talk to you a minute. And . . . then . . . he said, I want to talk to you about your question with affordable housing. He said, you know, you really shouldn't say – ask questions about affordable housing and COAH because it will bring in niggers. And I'm not a person who – I'm always a person who speaks and I was flabbergasted, I was speechless. I just said, oh.

(Merckx Dep., 8:6-19.)

In the summer of 2006, during a conversation between Shockett and Ferrucci regarding the possibility of Greenways developing affordable housing on the Property, Ferrucci stated, "I don't have a problem with that as long as it's senior, . . . but I don't want the other kind." (Deposition of Steven Shockett, 56:8-10.) According to Shockett's testimony, Ferrucci was "clear as day that . . . if he was going to allow affordable housing, it had to be senior." (Shockett Dep., 56:17-19.)

In 2007, although Ferrucci was no longer mayor, he served on the Township Committee. (Ferrucci Dep., 6:10-21.) On September 25, 2007, during a meeting that Merckx attended, Ferrucci told the Township Committee that it had to be "very careful of Section 8 housing." (Merckx Dep., 11:16-12:14.) Merckx inferred from this statement that Ferrucci was "still very concerned about minorities coming into" Franklin Township. (Merckx Dep., 12:15-21.) The official minutes of the September 25, 2007 meeting memorialize Ferrucci's mention of Section 8 housing.

After one Committee meeting, Ferrucci, Joseph Petsch, and Gary Bendy met for dinner and drinks at Marie's Italian Restaurant. (Deposition of Gary J. Bendy, 5:23-6:7.) At the time, Petsch was running for mayor, Ferrucci was the well-known small

6

town power broker, and Bendy aspired to be in local politics. (Bendy Dep.; Shockett Dep., 82:5-22 and 91:6-11.) According to Bendy, Ferrucci stated that "he did not want the COAH" plan. (Bendy Dep., 7:19-8:1.) Mr. Bendy asked, "well, what seems to be the issue with . . . COAH housing?" (Bendy Dep., 8:4-6.) Ferrucci responded, "do you want niggers living in our town because that's what COAH housing brings here." (Bendy Dep., 8:6-8.) Petsch neither agreed nor disagreed with this statement; he "didn't say anything." (Bendy Dep., 8:9-12.)

Around that time, Ferrucci met Joseph Cucinotta, an individual who serves as Greenways' "eyes and ears in town," (Shockett Dep., 32:15-19), in the parking lot of a local Wawa. (Deposition of Joseph Cucinotta, 8:11-18.) Ferrucci advised that he owned three lots that he wanted to sell to Shockett. (Cucinotta Dep., 8:11-18.) Subsequently, after he left office, Ferrucci again met with Cucinotta and stated that he "still [had] the power and authority" and could help Shockett obtain approvals "if he buys [the] lots." (Cucinotta Dep., 8:19-24.) Thereafter, approximately October 2007, Ferrucci met with Shockett himself and stated, "The guys on the committee are my guys, . . . and I can get this thing passed for you . . . Buy these lots and I'll get you your approvals." (Shockett Dep., 89:16-22.) Ferrucci still attends "virtually every . . . township meeting" and "speaks with the current committeemen regularly." (Shockett Dep., 82:5-27.)

Petsch was elected mayor of Franklin Township in November 2008. According to the testimony of Cucinotta, Petsch has repeatedly made anti-Semitic comments regarding Shockett while in office. Specifically, Cucinotta testified as follows:

> Q. Has Mr. Petsch ever approached you and referred to Mr. Shockett in a derogatory manner?
> A. Yes.

7

>Q. And on how many such occasions?
>A. Several.
>Q. When you say several, can you just –
>A. Four, five, whatever.
>Q. And … how specifically did he refer to Mr. Shockett?
>A. As a Jew lawyer.
>
> * * *
>
>Q. In each of those times, is that how he referred to Mr. Shockett as a Jew lawyer?
>A. Oh, several times, not every time, no. But several times he had.
>Q. And just give me the context of one of these conversations that you recall?
>A. Well, one time he said, did the Jew lawyer take his medicine today?
>Q. And where did he say that?
>A. At the ball field, at the Delsea Regional High School ball field.
>
> * * * *
>
>Q. Did Mr. Petsch come up to you or did you come up to Mr. Petsch?
>A. No, he come over to me.
>Q. At that time what was Mr. Petsch's role or position in the township?
>A. He was mayor.

(Cucinotta Dep., 6:8-7:22.)  Cucinotta also testified that he heard Petsch tell others that "affordable housing equals niggers." (Cucinotta Dep., 18:14-18.)

Throughout 2009, Mr. Shockett and representatives of the Township engaged in "regular meetings" regarding the settlement of the COAH matter and the development of the Greenways property.  (Shockett Dep., 106:1-17.)  In the fall of 2009, during a meeting between Ferrucci and Bruce Manton, a local builder, Ferrucci told Manton that settling the Mount Laurel litigation, thereby allowing the development, would bring "niggers to town." (Greenways' Answers to Interrogs., § 18.)  Ferrucci proceeded to ask Manton, "Bruce, do you want niggers coming to town?" (Id.)

David Ferrucci denies using the "n" word to describe African Americans even once within the past ten years.  (Ferrucci Dep., 15:14-16.)

Anthony Ferrucci, Franklin Township's former Chief of Police and Dave Ferrucci's uncle, (Shockett Dep., 79:10-22), testified that Petsch has called Shockett a

8

"fucking Jew." (Deposition of Anthony Ferrucci, 5:25-6:10.) Specifically, during a Township meeting in 2010, Shockett questioned Petsch about certain subjects. (Affidavit of Anthony Ferrucci, ¶ 2.) When the meeting was over, as Shockett was walking across the room, Petsch said, "There's the fucking Jew." (Anthony Ferrucci Dep., 5:25-6:10; Anthony Ferrucci Aff., ¶¶ 2-3.) Additionally, Bendy has known Petsch since 2002 and has heard Petsch make disparaging statements about "minorities in the fire [department]." (Bendy Dep., 10:16-20.)

D. Arguments

In its motion for summary judgment, Defendant first argues that the Greenways' Fair Housing Act claim is not ripe because Shockett admitted during his deposition that he did not file a site plan/proposal with Franklin Township to develop the property at issue, so there can be no final government decision on which to base a claim of FHA violation. Separately, Defendant argues that Plaintiffs are unable to show intentional discrimination violative of the FHA because there was no denial of housing to an individual, nor was there a denial of a housing development plan to a developer. While "most [FHA] reasonable accommodations claims must first be presented to local land use boards," claims of discriminatory intent or discriminatory impact are ripe even where approvals have not been sought. See Lapid-Laurel, LLC v. Zoning Bd. of Adjustment of Twp. of Scotch Plains, 284 F.3d 442, 452-54 (3d Cir. 2003). Accord Lapid Ventures, LLC v. Township of Piscataway, 2011 WL 2429314 at *6 (D.N.J. June 13, 2011) (citing County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 164 (3d Cir. 2006) (in a facial attack on a zoning ordinance or practice, there is no requirement to seek a final decision)). See also Assisted Living Associates of Moorestown, LLC v.

Moorestown Twp., 996 F. Supp. 409, 427 (D.N.J. 1998) ("Numerous courts have stressed that housing discrimination causes a uniquely immediate injury.").

Next, Defendant argues that Mr. and Mrs. Torres cannot sustain their FHA claim of discrimination because they have no evidence that they applied for housing and were rejected due to race, ethnicity, or otherwise. Rather, Mrs. Torres testified that she searched certain realtors' listings on the Internet in October and November of 2009, found only one house in Franklin Township in her price range, but determined it was too "beat down" to purchase.[2] Shockett has testified that an individual like Mrs. Torres could purchase "one of the homes [he's] proposing . . . in a heartbeat." (Shockett Dep., 121:21-25.) Greenways contemplates "housing stock that's going to . . . start in the $50,000 range, and . . . a 10 percent down payment would be $5,000." (Shockett Dep., 121:5-123:1.) An $80,000 home would have the "three bedrooms" that Mrs. Torres was looking for, and there are "plenty of programs out there that, on a 60 or $80,000 project, one could get a 5 percent loan depending on income." (Shockett Dep., 123:25-124:7.)

Mr. and Mrs. Torres believe they have been or are about to be injured by alleged discriminatory practices in Franklin Township that have stalled the Greenways project.

---

[2]Specifically, Mrs. Torres testified that in October or November 2009, and on prior occasions, she looked in *The Courier-Post* for affordable homes within Franklin Township. (Deposition of Marion Torres, 17:18-25.) Also in October or November 2009, Mrs. Torres accessed web sites for "Weichert and ReMax" and "Googled Franklin" in order to "check out some of the houses." (Id., 13:12-22.) Because she has two children, she looked for a house with three bedrooms. Because she was "pretty much discouraged" by the lack of affordable housing, she did not perform any further Internet research regarding a home in Franklin Township. (Id., 14:17-21.)

Thus, they believe they are "aggrieved persons" within the meaning of 42 U.S.C. § 4613[3] as the couple considers itself a prospective buyer.  Further, Mrs. Torres is arguably a member of the community in which allegedly unlawful discrimination is taking place, as she was raised in the community and still visits and worships there, desiring and seeking to purchase affordable housing.  Defendant's argument regarding Mr. and Mrs. Torres was framed in terms of their ability to establish a prima facie case.  A plaintiff can establish a prima facie claim of housing discrimination under the FHA by showing the challenged actions were motivated by intentional discrimination.  <u>Mitchell v. Walters</u>, 2010 WL 3614210 *6 (D.N.J. Sept. 8, 2010); <u>City of Butler</u>, 892 F.2d at 323.  There are certainly genuine issues of material fact as to the Township's motivation in delaying the Greenways project.  Therefore, summary judgment will be denied at this time.

Defendant next argues that Plaintiffs cannot show disparate impact under the FHA because there is no evidence that Defendant's actions had a discriminatory effect on any class protected by the FHA.  That is, there is "no survey of who is affected by the township's policies, no census data, no charts, no graphs." (Def. Reply Br., p. 4.)[4] Similarly, Defendant argues that the Equal Protection claim cannot survive because there is no evidence of a disparate impact on a protected class (African American, Hispanic, or Jewish), and no proof that others similarly situated were treated differently.  Violations of the Fair Housing Act, however, can be proved under an intent

---

[3]The issue of standing was not briefed by the defense.

[4]On the other hand, Defendant presented the Court with census data indicating that in 2009, the population of Franklin Township was 17,368, which included 15,325 whites, 949 blacks, 626 Hispanics, and 676 others.  (Def. Stmt. of Facts, ¶ 8-9.)

standard or an effect standard.  It is clear from the record that this case has been framed in terms of discriminatory intent, not disparate impact or discriminatory effect.  There are sufficient outstanding issues of fact to allow the FHA and Equal Protection claims to proceed at this juncture.

Defendant also argues that Plaintiffs have produced no evidence that they were denied Due Process.  Plaintiff points out that "[t]o prevail on a substantive due process claim," a plaintiff must demonstrate "that an arbitrary and capricious act deprived [him or her] of a protected property interest."  Taylor Investment, Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1292 (3d Cir. 1993).  Plaintiffs contend that the arbitrary and capricious act at issue is Franklin Township's failure to satisfy its COAH obligations and approve low income housing, and the protected property interests are the Greenways' interest and substantial investment in the development of its property and Mr. and Mrs. Torres' desire to move to affordable housing built as part of the Greenways development.  (Pl. Br., p. 25.)  Defendant counters by arguing that this claim is not ripe, and has not been administratively exhausted or judicially exhausted at the State level.  As this argument was dealt with above, the Court need not address it further.

Finally, while Defendant acknowledges that former Franklin Township Mayors "David Ferrucci and Joseph Petsch used racial slurs and [did not] want minorities [to move] into [Franklin Township]," (Def. Reply Br., p. 2), it argues that Plaintiff should have evidence of similar opinions of other Committee or Planning Board members for a jury to consider, (id.).  This argument may be made at the time of trial; it is not one which will sway the Court at the summary judgment stage.  The Court notes, however, that in establishing a violation of the FHA, a plaintiff need not show that racial animus

12

was the sole reason for denial of housing, only that it was "one significant factor." United States v. Pelzer Realty Co., Inc., 484 F.2d 438 (5th Cir. 1973).  In this case, even without evidence of intent of the quorum, there is sufficient evidence on the record of racial animus and therefore discriminatory intent by Township officials to allow a jury to consider whether the Township's conduct made affordable housing "otherwise unavailable" in violation of the FHA.

## Conclusion

For these reasons, and due to the overwhelming amount of credibility determinations that must be made to resolve this case,

IT IS ORDERED on this 22nd day of December, 2011 that the Defendant's motion for summary judgment is hereby DENIED.

      /s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.